**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**KATHLEEN MANCUSO,**

                    **Plaintiff,**

          **v.**                                    **1:06-CV-930**
                                                    **(GLS)**

**COMMISSIONER OF SOCIAL SECURITY**
**ADMINISTRATION,**

                    **Defendant.**
_____

**APPEARANCES:**              **OF COUNSEL:**

**FOR THE PLAINTIFF:**

Office of Peter M. Margolius       PETER M. MARGOLIUS, ESQ.
7 Howard Street
Catskill, New York 12414

**FOR THE DEFENDANT:**

HON. GLENN T. SUDDABY       WILLIAM H. PEASE
United States Attorney            Assistant U.S. Attorney
P.O. Box 7198
100 S. Clinton Street
Syracuse, NY 13261-7198

**Gary L. Sharpe**
**U.S. District Judge**

## DECISION AND ORDER

### I. Introduction

Plaintiff Kathleen Mancuso alleges that carpal tunnel syndrome and diabetes have disabled her, and challenges the denial of benefits by the Commissioner of Social Security.  Having reviewed the administrative record, the court affirms the Commissioner's decision.

### II. Procedural History

Plaintiff initially filed an application for social security disability insurance benefits ("SSDI") on March 23, 1999, alleging disability due to carpal tunnel syndrome.  (Tr. at 73-75, 96).  This application was denied following a hearing by an Administrative Law Judge ("ALJ"), and Plaintiff requested Appeals Council review.  (Tr. at 38-46, 63-67).  Plaintiff filed another application, for SSDI and supplemental security income ("SSI"), on April 5, 2000.  (Tr. at 5M).  This application was denied by ALJ decision dated July 23, 2001.  (Tr. at 49-59).  Plaintiff appealed this denial to the Appeals Council, which remanded the claim and consolidated it with Plaintiff's previous March 23, 1999 application for rehearing.  (Tr. at 63-67).  On August 10, 2001, Plaintiff filed a third application, for SSDI and SSI.  (Tr. at 245-47, 415-17).  Following initial denial of this application, Plaintiff

requested a hearing, and this claim was consolidated with the previous two applications.  (Tr. at 5M, 190-97).

A hearing was conducted on January 14, 2003 and February 10, 2004, before ALJ Thomas Zolezzi.  (Tr. at 504-07, 507-30).  On March 26, 2004,[1] the ALJ issued a decision which found Plaintiff not disabled.  (Tr. at 5M-5Y).  This decision became the final decision of the Commissioner when the Appeals Council denied review on June 29, 2006.  (Tr. at 5A-5E).

On August 1, 2006, Mancuso brought this action pursuant to 42 U.S.C. § 405(g) seeking review of the Commissioner's final determination. The Commissioner then filed an answer and a certified administrative transcript, Mancuso filed a brief, and the Commissioner responded.

## III. <u>Contentions</u>

Mancuso contends that the Commissioner's decision is not supported by substantial evidence.  She claims that (1) the ALJ failed to clarify the opinion of Plaintiff's treating physician; (2) the ALJ failed to properly evaluate the severity of Plaintiff's obesity; (3) the Appeals Council failed to consider new and material evidence, pertaining to the time period before

---

[1] As the Appeals Council noted, the ALJ's decision was undated, but issued on March 24, 2004.  (Tr. at 5A).

the ALJ's decision, which was submitted by Plaintiff after the date of the ALJ's decision; and (4) the ALJ erroneously concluded that there were a significant number of jobs in the national economy which Plaintiff could perform.  The Commissioner counters that substantial evidence supports the ALJ's decision.

## IV.  Facts

The evidence in this case is undisputed and the court adopts the recitation of facts contained in the ALJ's decision, referenced by the parties in their briefs.  (Tr. at 5O-5R); *see Pl.'s Br. at 2-3; Def.'s Br. at 2*.

## V.  Discussion

### A.    Standard and Scope of Review

When reviewing the Commissioner's final decision under 42 U.S.C. 405(g),[2] the court "must determine whether the correct legal standards were applied and whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004) (citation omitted).  It does not determine *de novo* whether a claimant is disabled.  *See Curry v.*

---

[2]The section 405(g) standard of review in disability insurance proceedings under Title II of the Social Security Act also applies to supplemental security income proceedings under Title XVI of the Act.  *See* 42 U.S.C. § 1383(c)(3).  Similarly, the analysis of supplemental income claims under Title XVI parallels, in relevant part, the statutory and regulatory framework applicable to disability claims under Title II.  *See Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003).

4

*Apfel*, 209 F.3d 117, 122 (2d Cir. 2000) (citation omitted).  Although the

Commissioner is ultimately responsible for determining a claimant's

eligibility, the actual disability determination is made by an ALJ, and that

decision is subject to judicial review on appeal.  A court may not affirm an

ALJ's decision if it reasonably doubts whether the proper legal standards

were applied, even if it appears to be supported by substantial evidence.

*See Pollard v. Halter*, 377 F.3d 183, 188-89 (2d Cir. 2004) (citation

omitted); *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987).  "Failure to

apply the correct legal standards is grounds for reversal."  *Pollard*, 377

F.3d at 189 (internal quotation marks and citation omitted).

        A court's factual review of the Commissioner's decision is limited to

the determination of whether substantial evidence in the record supports

the decision.  *See* 42 U.S.C. § 405(g); *see also Rivera v. Sullivan*, 923 F.2d

964, 967 (2d Cir. 1991).  "Substantial evidence ... means such relevant

evidence as a reasonable mind might accept as adequate to support a

conclusion."  *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quoting

*Richardson v. Perales*, 402 U.S. 389, 401 (1971)) (internal quotation marks

omitted).  It must be "more than a mere scintilla" of evidence scattered

throughout the administrative record.  *Williams ex rel. Williams v. Bowen*,

859 F.2d 255, 258 (2d Cir. 1988) (citations omitted).  An ALJ must set forth

the crucial factors justifying his findings with sufficient specificity to allow a

court to determine whether substantial evidence supports the decision.

*See Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).  "To determine

on appeal whether an ALJ's findings are supported by substantial

evidence, a reviewing court considers the whole record, examining the

evidence from both sides, because an analysis of the substantiality of the

evidence must also include that which detracts from its weight."  *Williams*,

859 F.2d at 258 (citations omitted).  However, a reviewing court cannot

substitute its interpretation of the administrative record for that of the

Commissioner if the record contains substantial support for the ALJ's

decision.  *See* 42 U.S.C. § 405(g); *Rutherford v. Schweiker*, 685 F.2d 60,

62 (2d Cir. 1982).

The court has the authority to affirm, reverse, or modify a final

decision of the Commissioner with or without remand.  42 U.S.C. § 405(g);

*Butts*, 388 F.3d at 385.  Remand is warranted where there are gaps in the

record and further development of the evidence is needed, or where the

ALJ has applied an improper legal standard.  *See Butts*, 388 F.3d at 385;

*Rosa v. Callahan*, 168 F.3d 72, 82-83 (2d Cir. 1999); *Parker v. Harris*, 626

6

F.2d 225, 235 (2d Cir. 1980).  Remand is particularly appropriate where further findings or explanation will clarify the rationale for the ALJ's decision.  *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996) (citation omitted). By contrast, reversal and remand solely for calculation of benefits is appropriate when there is "persuasive proof of disability" and further development of the record would not serve any purpose.  *Rosa*, 168 F.3d at 83; *Parker*, 626 F.2d at 235; *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 644 (2d Cir. 1983) (reversal without remand for additional evidence particularly appropriate where payment of benefits already delayed for four years and remand would likely result in further lengthening the "painfully slow process" of determining disability).  However, absent sufficient evidence of disability, delay alone is not a valid basis for remand solely for calculation of benefits.  *See Bush v. Shalala*, 94 F.3d 40, 46 (2d Cir. 1996) (citation omitted).

### B. <u>Five-Step Disability Determination</u>

A plaintiff seeking Social Security Disability Insurance (SSDI) and Supplemental Security Income (SSI) benefits is disabled if she can establish that she is unable "to engage in *any* substantial gainful activity by reason of any medically determinable physical or mental impairment which

... has lasted or can be expected to last for a continuous period of not less than twelve months ...."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)[3] (emphasis added).

The Commissioner uses a five-step process to evaluate SSDI and SSI claims.  *See* 20 C.F.R. §§ 404.1520, 416.920.  Step One requires the ALJ to determine whether the claimant is presently engaging in substantial gainful activity (SGA).  20 C.F.R. §§ 404.1520(b), 416.920(b).  If so, she is not considered disabled.  However, if she is not engaged in SGA, Step Two requires that the ALJ determine whether the claimant has a severe impairment.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant is found to suffer from a severe impairment, Step Three requires that the ALJ determine whether the claimant's impairment meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, §§ 404.1520(d), 416.920(d).  The claimant is presumptively disabled if the

---

[3]In addition, a claimant's physical or mental impairment or impairments [must be] of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [s]he lives, or whether a specific job vacancy exists for h[er], or whether [s]he would be hired if [s]he applied for work.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).  Therefore, a plaintiff must not only carry a medically determinable impairment but an impairment so severe as to prevent her from engaging in any kind of substantial gainful work which exists in the national economy.

impairment meets or equals a listed impairment.  *See Ferraris*, 728 F.2d at 584.  If the claimant is not presumptively disabled, Step Four requires the ALJ to consider whether the claimant's residual functional capacity (RFC) precludes the performance of her past relevant work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  At Step Five, the ALJ determines whether the claimant can do any other work.  20 C.F.R. §§ 404.1520(g), 416.920(g).

The claimant has the burden of showing that she cannot perform past relevant work.  *Ferraris*, 728 F.2d at 584.  However, once she has met that burden, the ALJ can deny benefits only by showing, with specific reference to medical evidence, that she can perform some less demanding work.  *See White v. Sec'y of Health & Human Servs.*, 910 F.2d 64, 65 (2d Cir. 1990); *Ferraris*, 728 F.2d at 584.  In making this showing, the ALJ must consider the claimant's RFC, age, education, past work experience, and transferability of skills, to determine if she can perform other work existing in the national economy.  20 C.F.R. §§ 404.1520(g), 416.920(g); *see New York v. Sullivan*, 906 F.2d 910, 913 (2d Cir. 1990).

In this case, the ALJ found that Mancuso satisfied Step One because she had not worked since September 15, 1999.  (Tr. 20, 24, 26, 28).  In Step Two, the ALJ determined that she suffered from major depressive

disorder.  (Tr. 25, 28).[4]  In Step Three, the ALJ determined that this

impairment failed to meet or equal a combination of impairments listed in,

or medically equal to one listed in Appendix 1, Subpart P, Regulations No.

4.  (Tr. 25, 28).  In Step Four, the ALJ determined that Mancuso retained

the RFC to perform work at any exertional level, subject to the following

non-exertional limitations: marked limitations in maintaining attention and

concentration for extended periods; mild limitations in her ability to

remember locations and work-like procedures, understanding,

remembering, and carrying out short, simple instructions, performing

activities within a schedule, maintaining regular attendance, and being

punctual, sustaining an ordinary routine work setting; and moderate

limitations in her ability to understand, remember, and carry out detailed or

complex instructions, work with or near others without being distracted by

them, complete a normal workday or workweek, perform at a consistent

pace, interact appropriately with the public, and respond appropriately.  (Tr.

---

[4]The ALJ also found that Plaintiff suffered from no severe physical impairments. (Tr. at 24).  He concluded that although she at one point suffered from hyperthyroidism, those symptoms had resolved and she had not taken medication for the condition since 2001 when her condition was assessed as stable.  (Tr. at 24, 263-68).  Additionally, he concluded that while she had complained of intermittent gastrointestinal problems, no objective medical findings revealed any gastrointestinal impairment.  (Tr. at 24, 179-84, 251-53, 261-62, 265).

at 27-19).  Based on vocational expert testimony which he deemed

consistent with the Dictionary of Occupational Titles, the ALJ determined

that Plaintiff retained the RFC to perform her past work as a housekeeper

and janitor.  (Tr. 27-29).  In Step Five, the ALJ found that even if Plaintiff

could not perform her past relevant work, she could perform other work

existing in significant numbers in the national economy.  (Tr. at 27, 29).

Consequently, he found Mancuso not disabled and denied benefits.  (Tr. at

29).

### C.   Analysis

####    1.   *Treating Physician Rule*

Mancuso argues that the ALJ erroneously failed to clarify the opinion

of her treating physician, Dr. Inna Kudria.  *Pl.'s Br. at 4.*  Generally, the

opinion of a treating physician is given controlling weight if it is based upon

well-supported, medically acceptable clinical and laboratory diagnostic

techniques and is not inconsistent with other substantial evidence.  20

C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); *see Schaal v. Apfel*, 134 F.3d 496

(2d Cir. 1998).  As already noted, an ALJ may not arbitrarily substitute his

own judgment for a competent medical opinion.  *Rosa*, 168 F.3d at 79.

Thus, if the treating physician's opinion is not given controlling weight, the

11

ALJ must assess several factors to determine how much weight to afford the opinion: the length of the treatment relationship, the frequency of examination by the treating physician for the condition(s) in question, the medical evidence supporting the opinion, the consistency of the opinion with the record as a whole, the qualifications of the treating physician, and other factors tending to support or contradict the opinion.  20 C.F.R. §§ 404.1527(d)(2)-(6), 416.927(d)(2)-(6).

Moreover, the "ultimate finding of whether a claimant is disabled and cannot work [is] 'reserved to the Commissioner.'"  *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) (citation omitted); *see* 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1).  "That means that the Social Security Administration considers the data that physicians provide but draws its own conclusions."  *Snell*, 177 F.3d at 133.   Thus, a treating physician's disability assessment is not determinative.  *Id.*  Where the evidence of record includes medical source opinions that are inconsistent with other evidence or are internally inconsistent, the ALJ must weigh all of the evidence and make a disability determination based on the totality of that evidence.  *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  An ALJ is required to recontact a treating physician in order to clarify the physician's opinion, when the opinion

"contains a conflict or ambiguity that must be resolved, the report does not

contain all the necessary information, or does not appear to be based on

medically acceptable clinical and laboratory diagnostic techniques."  20

C.F.R. §§ 404.1512(e)(1), 416.912(e)(1).

On April 23, 2001, Dr. Kudria indicated, on a "check-off" sheet

supplied by Plaintiff's attorney, that Plaintiff was "totally disabled."  (Tr. at

364).  Contrary to Plaintiff's contention, the ALJ did request clarification of

this opinion from Dr. Kudria.  On May 15, 2003, June 11, 2003, and July

10, 2003, the ALJ sent letters to Dr. Kudria requesting clarification of her

opinion that Plaintiff was "totally disabled."  (Tr. at 5S, 382).  Dr. Kudria

provided a response to these requests on August 12, 2003.  (Tr. at 392).

Dr. Kudria stated that Plaintiff's motor examination showed diffuse

weakness in the upper extremities 4/5, as well as diminished sensation

over the radial forearms and hands.  *Id.*

The ALJ reviewed this letter, and determined that the reasoning

supplied by Dr. Kudria was not consistent with the medical record as a

whole, nor with Dr. Kudria's own treatment notes.  (Tr. at 5S-5T).  Dr.

Kudria's clarifying opinion, as noted above, stated that Plaintiff suffered

from mild diffuse weakness of the upper extremities and diminished

sensation in the radial forearms and hands.  (Tr. at 392).  This opinion is not supported by Dr. Kudria's clinical findings, which consistently revealed good strength in the extremities, with no abnormal findings.  (Tr. at 365-78, 396-97).

Additionally, the findings of other physicians, including state agency physician Dr. Wootan, indicated that Plaintiff did not suffer from the limitations indicated in Dr. Kudria's August 12, 2003 letter.  EMG studies performed by Dr. Rahma Mustapha indicated that although Plaintiff was found to suffer from chronic carpal tunnel syndrome bilaterally, she showed no muscle atrophy and normal strength in the upper extremities.  (Tr. at 398).  A physical RFC assessment completed on November 27, 2001 found Plaintiff to have normal fine motor ability and grip strength.  (Tr. at 357).  Dr. Wootan, a state agency physician whose opinion received consideration by the ALJ, found on three separate examinations that Plaintiff retained an RFC for sedentary work, although she had some restrictions in lifting, carrying, and fine manipulation.  (Tr. at 145, 151, 331).

The ALJ also noted that Dr. Kudria's restrictive opinion was inconsistent with Plaintiff's reported daily activities, which included cooking, shopping, driving, carrying groceries, vacuuming, doing laundry, and

changing bed linens.  (Tr. at 5U-5V, 328, 486-87).  After considering Dr.

Kudria's opinion in light of the entire medical record, the ALJ declined to

give the opinion controlling weight, although he did give it some weight.

(Tr. at 5U-5V).

The record, as well as the ALJ's decision, indicates that the ALJ

fulfilled his duty in clarifying Dr. Kudria's opinion that Plaintiff was "totally

disabled."  The ALJ obtained a clarifying opinion from Dr. Kudria, which he

thoroughly considered within the context of the entire medical record.  (Tr.

at 5S-5T).  Based on the above, the ALJ did not err in determining that Dr.

Kudria's opinion was not entitled to controlling weight.

### 2.   *Plaintiff's Alleged Obesity*

Plaintiff argues that the ALJ failed to consider her obesity, which

Plaintiff claims should have been deemed a severe impairment.  *Pl.'s Br. at*

*4.*  Plaintiff did not allege obesity as an impairment until she filed her brief

in this case.  The Second Circuit addressed a similar situation in *Cruz v.*

*Barnhart*, 2006 WL 1228581, *9-10 (2d Cir. 2006).  The Court noted that

while obesity is not in and of itself a disability, it can be considered a

severe impairment which affects the disability analysis, when, "alone or in

combination with another medically determinable physical or mental

impairment(s), it significantly limits an individual's physical or mental ability to do basic work activities." *Id.* at *9. The Second Circuit clarified that "there is no obligation on an ALJ to single out a claimant's obesity for discussion in all cases." *Id.*; *see also Rutherford v. Barnhart*, 399 F.3d 546, 552-53 (3d Cir. 2005); *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004).

In this case, there is no evidence that Plaintiff's obesity – alone or in combination with other impairments – had any effect on her ability to do work-related activities. Plaintiff's treating physician repeatedly found that Plaintiff had a normal gait and full strength, and Dr. Wootan found no limitations in walking, sitting, or standing on three separate examinations. (Tr. at 145, 151, 331, 365-78, 432-49). As such, the Court determines that the ALJ did not err in not specifically addressing Plaintiff's obesity.

### 3. New and Material Evidence

Plaintiff argues that the Appeals Council failed to consider new and material evidence submitted to it following the ALJ's decision. *Pl.'s Br. at 4-5.* The regulations provide that new and material evidence submitted to the Appeals Council must be considered when it relates to the time period before the ALJ's decision. 20 C.F.R. §§ 404.970(b), 404.976(b),

416.1470(b), 416.1476(b); *see Perez v. Chater*, 77 F.3d 41 (2d Cir. 1996).

If the Appeals Council decides that such evidence indicates that the ALJ's

action, findings, or conclusions are contrary to the weight of the record,

including the new evidence, it will review the case.  20 C.F.R. §§

404.970(b), 416.1470(b).

In this case, Plaintiff submitted additional evidence to the Appeals

Council, which was noted by the Appeals Council in its denial of review.

(Tr. at 5A-5B, 5E).  The Appeals Council determined that the additional

evidence did not provide a basis for changing the ALJ's decision.  (Tr. at

5B).

The evidence submitted by Plaintiff consisted of a medical source

statement from Dr. Kudria along with Dr. Kudria's treatment notes for the

time period from October 13, 2003 through June 22, 2005.  (Tr. at 426-49).

In the medical source statement, Dr. Kudria opined that Plaintiff was limited

to sitting and standing for two hours in an eight-hour workday, could carry

ten pounds frequently, and had limitations in the upper extremities.  (Tr. at

428-29).  Dr. Kudria also opined that Plaintiff could never climb, balance,

kneel, crouch, crawl, or stoop, due to chronic low back pain.  (Tr. at 429).

She also stated that Plaintiff was limited in reaching in all directions, and

handling objects.  (Tr. at 430).

The Court finds that the Appeals Council did not err in refusing to remand the case to the ALJ based on the new evidence provided by Plaintiff.  The treatment notes indicate no limitations of the upper extremities, except that Plaintiff's arm was in a cast following a wrist fracture.  (Tr. at 432-49).  Plaintiff was noted to have a normal gait and good strength throughout, and had consistently normal neurological examinations.  *Id.*  These findings are consistent with treatment notes from Dr. Kudria already contained in the record.  (*See* Tr. at 365-78).  Moreover, they are consistent with the entire medical record, which reveals no abnormalities in Plaintiff's sitting, walking, or standing capabilities, and only mild restrictions resulting from Plaintiff's carpal tunnel syndrome, all of which were incorporated by the ALJ into his RFC determination.  (*See, e.g.,* Tr. at 145, 151, 331, 357, 398).

Thus, based on the above discussion, the Court concludes that the Appeals Council properly considered the new evidence submitted by Plaintiff, and properly concluded that this new evidence did not affect the validity of the ALJ's decision.

### 4. *Jobs in the National Economy*

18

Plaintiff argues that the ALJ improperly determined that there were a significant number of jobs in the national economy which she could perform. *Pl.'s Br. at 5.* At the hearing, vocational expert ("VE") Julie Andrews indicated that Plaintiff could perform the job of surveillance system monitor, of which there are 188,540 jobs nationally, and 672 jobs regionally. (Tr. at 522-24). Plaintiff points to testimony of David Sypher, a VE, who testified at a different disability hearing nine months later on November 9, 2004. *Pl.'s Br. at 5.* Plaintiff claims that at this "different" hearing, VE Sypher stated that there were only 140 positions of surveillance system monitor regionally. *Id.* This "different" hearing does not appear in the record and the alleged testimony was not elicited in relation to the instant case. Plaintiff provides no citation for her assertion, and offers no additional evidence that VE Andrews' testimony was erroneous. Moreover, Plaintiff failed to object to VE Andrews' testimony at the hearing itself. (Tr. at 522-24).

The ALJ was entitled to rely on the testimony of the VE in coming to his conclusion that Plaintiff could perform jobs existing in significant numbers in the national economy. *See* 20 C.F.R. §§ 404.1566, 416.966. The VE's testimony was based on information contained in the

19

Occupational Outlook Handbook, a source of which the Commissioner is entitled to take administrative notice. *Id.* Moreover, 672 jobs regionally and 188,540 jobs nationally is sufficient to constitute a significant number of jobs in the national economy. *See Colon v. Comm'r of Social Sec.*, 2004 WL 1144059, *7-9 (N.D.N.Y. 2004) (Sharpe, J.) (holding that occupational base was not significantly eroded where approximately one hundred jobs of surveillance system monitor existed in regional economy). Thus, the Court concludes that substantial evidence supports the ALJ's decision that there were a significant number of jobs in the national economy which Plaintiff could perform.

## VI. Conclusion

After careful review of the entire record, and for the reasons stated, the Commissioner's denial of benefits was based on substantial evidence and not erroneous as a matter of law. Accordingly, the ALJ's decision is affirmed.

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the decision denying disability benefits is

**AFFIRMED**; and it is further

**ORDERED** that the Clerk serve a copy of this Decision and Order on

the parties.

Dated:      March 6, 2008
            Albany, New York

                              _____
                              Gary L. Sharpe
                              U.S. District Judge